**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

CHRISTOPHER WOODS and DEIDRE "DEE" SMITH,

      Plaintiffs,

v.

CATERPILLAR, INC.

      Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiffs Christopher Woods and Deidre "Dee" Smith, by and through their attorneys, Goodspeed & Merrill, for their Complaint and Jury Demand against Caterpillar, Inc ("Defendant or the "Company") state and allege as follows:

## NATURE OF THE ACTION

1.    This is an employment discrimination case arising from Defendant's intentional discrimination against individuals with Disabilities arising under Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendments Act of 2008, and Title I of the Civil Rights Act of 1991. The Equal Employment Opportunities Commission ("EEOC") investigated charges of discrimination brought by Plaintiffs after they were discriminated against, issued a determination finding that Defendant engaged in employment practices unlawful under the ADA. After conciliation efforts failed, the EEOC issued right to sue letters.

2.    Plaintiffs and others employed by Defendant were refused requests for reasonable accommodations, told that they would only be returned to work if 100% healthy with no

restrictions, placed on involuntary unpaid leave, and, in some cases, terminated. The EEOC's investigation concluded that Plaintiffs and at least three other employees could have been reasonably accommodated by Defendant without undue hardship, could have remained on the job, and that Defendant engaged in practices that violated the ADA.

3.     Defendant's practice of requiring employees with a disability to be 100% healed or to be without any medical restrictions before they could return to work was in violation of the ADA, and caused Plaintiffs economic damages and non-economic damages including pain, suffering, humiliation, embarrassment, and loss of enjoyment of life. With respect to Ms. Smith, she was terminated because of her disability and/or her need for accommodation, causing her to lose her home. With respect to Mr. Woods, upon being returned to work, he was directed to use equipment outside his restrictions which caused him great pain and exacerbated his condition in retaliation for his assertion of his federally protected rights under the ADA. Further, Mr. Woods was subjected to a hostile work environment, was assigned tasks outside his restrictions, and was disciplined for his refusal to use equipment that caused him great pain due to his disability.

## JURISDICTION AND VENUE

4.     Jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331 and 1343.

5.     This action is authorized and instated pursuant to § 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference §§ 706(f)(1) and (3) and 707 of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to § 102 of the Civil Rights act of 1991, 42 U.S.C. § 1981a.

6.     Venue is proper as the intentional discriminatory acts complained of herein occurred within this district. 42 U.S.C. § 2220e-5(f)(3); 28 U.S.C. § 1391(b)(1)-(2).

## PARTIES

7.    At all times relevant to this Complaint, Plaintiffs were residents of the State of Colorado.

8.    At all times relevant to this Complaint, Defendant Caterpillar, Inc., was a corporation formed in Delaware with its corporate headquarters located in Illinois and has continuously had more than 500 employees.

9.    At all relevant times, Defendant has been an employer engaged in industry and affecting commerce under §§ 101(5) and 101(7) of the ADD, 42 U.S.C. §§ 12111(5) and (7), and is a covered entity under §101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

10.    More than thirty days prior to the institution of this lawsuit, Charging Parties Christopher Woods and Deidre Smith filed charges of discrimination with the EEOC alleging violations of the ADA by Defendant.

11.    The EEOC provided notices of the charges of discrimination to Defendant.

12.    The EEOC investigated the charges of discrimination.

13.    On February 28, 2020, the EEOC issued Mr. Woods a Letter of Determination finding that "there is reasonable cause to believe that [Defendant] violated the ADA, as alleged, in that Charging Party and other aggrieved individuals were denied requests for reasonable accommodations and subjected to retaliatory discipline in connection with their requests for reasonable accommodations."

14.    On February 28, 2020, the EEOC issued Ms. Smith a Letter of Determination also finding that "there is reasonable cause to believe that [Defendant] violated the ADA, as alleged."

15.     On November 16, 2020, the EEOC issued a Notice of Failure of Conciliation for both Plaintiffs and advising Defendant that the EEOC determined conciliation efforts would no longer be productive.

16.      On November 16, 2020, the EEOC issued both Plaintiffs a Notice of Right to Sue.

17.     All conditions precedent to this lawsuit have been fulfilled.

## GENERAL ALLEGATIONS

18.     Since at least June 2015, Defendant has engaged in unlawful employment practices in violation of § 102 of Title I of the ADA, 42 U.S.C. § 12112.

19.     Defendant engaged in a practice of placing employees with work restrictions on unpaid indefinite involuntary leaves of absence until they could return to work with an unrestricted medical release.

20.     As a matter of policy, Defendant would not permit employees with restrictions to work, made no effort to accommodate restrictions, and did not allow employees to return unless fully healed or without restrictions. Ms. Smith's supervisor told her, when she notified him of her need for medical leave for surgery, that she would not be returned to work unless she was 100% healed and without restrictions.

21.     Prior to and during the involuntary leave of absence, Defendant refused to engage in the interactive process with disabled employees, as required under the ADA.

22.     In Mr. Woods' case, Defendant disciplined, harassed, and retaliated against him for requesting accommodation from working on a stock picker machine which aggravated his known disability.

23.     In Ms. Smith's case, Defendant would not return her to work after a medical leave of absence unless she could return without restrictions. She was unable to return without restrictions and Defendant terminated her on June 1, 2017.

24.     Since at least December of 2015, Defendant as a matter of policy or practice implemented a 100% healed return to work rule.

25.     Defendant did not try to accommodate either of Plaintiffs work restrictions through job modification or job reassignment and required that they stay on involuntary leaves of absence until they could return to work with no restrictions in violation of the ADA.

26.     Defendant's application of its policy only permitting employees to return to work with no restrictions and requiring that they remain on indefinite unpaid leave until they are able to return with no restrictions amounts to retaliation for the known need for the interactive process and accommodation.

27.     Defendant's application of its rigid and inflexible leave policies and its 100% fully healed return to work rule subjected Plaintiffs to work standards that have the effect of discriminating against them on the basis of disability.

28.     During all times relevant to this complaint, Plaintiffs could perform the essential functions of their positions with or without reasonable accommodation.

29.     Defendant failed to initiate the interactive process with respect to both Plaintiffs to identify reasonable accommodations.

30.     Defendant's policy requiring employees be 100% healed or without work restrictions operated to discriminate against qualified employees with disabilities. Defendant's

policy of requiring employees with workplace restrictions on extended unpaid indefinite leave operated to retaliate against employees in need of the interactive process and accommodation.

31.     During all times relevant to this complaint, Plaintiffs were qualified individuals with a disability under §§ 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

## CHRISTOPHER WOODS

32.     Defendant hired Plaintiff Christopher Woods on October 25, 1999, as a Materials Specialist. He worked at the Denver Distribution Center located at 4705 E. 48th Ave., Denver, CO 80216.

33.     Mr. Woods suffers from knee pain ranging from mild to severe in both knees which prevents him from standing and walking. His condition was exacerbated when using the stock picker for extended periods of time.

34.     As far back as 2008 Defendant was on notice of Mr. Woods' disability and related pain which had been substantiated through multiple medical providers. Mr. Woods received accommodations from Defendant in the form of limited use of machines, including the "cherry picker" machine (also known as a "stock picker") because operating the machine exacerbated his knee problems causing him debilitating knee pain.

35.     In October of 2008, Mr. Woods was given the accommodation of modified working conditions "as needed" where he was not required to operate machines. Mr. Woods was advised at this time that continued use of machines at work could result in a permanent knee injury.

36.     On September 29, 2015, Mr. Woods again began suffering knee pain as a result of operating the stock picker. He was seen by an onsite nurse, Sue Bloom, RN, he was given first aid and anti-inflammatory medications and required to return to work.

37.     On October 5, 2015, Mr. Woods again suffered knee pain as a result of continuing being required to operate machines including the stock picker.

38.     The next day, October 6, 2015, Mr. Woods was evaluated by Dr. Brian D. Williams at the SCL Occupational Health Clinic. He was released to return to work with restrictions of no lifting more than 50 pounds, no crawling/climbing, and rest breaks of 10 minutes every 2 hours. During a subsequent progress visit on October 12, 2015, Dr. Williams added no working on unstable platforms to Mr. Woods restrictions.

39.     On or around October 12, 2015, Nurse Bloom informed Mr. Woods that HR would contact him to return him to modified duty.

40.     Mr. Woods, despite the need for modified duty, was continually assigned to the stock picker. When assigned to the stock picker on October 17, 2015, Mr. Woods refused, was disciplined, and sent home. He was again assigned to the stock picker on October 18, 2015, he refused again, was disciplined, and sent home. On October 19, 2015, he was again assigned to the stock picker, he refused and was disciplined. On October 20, 2015, he was again assigned to the stock picker, he refused, was disciplined, and sent home.

41.     Mr. Woods' request and need for modified duty, the same modified duty he had been provided in 2008, resulted in him being retaliated against through Defendant's progressive disciplinary process impacting his pay, benefits, and status, including his ability to maintain employment with Defendant and limiting his promotional opportunities.

42.     On November 2, 2020, knowing that Defendant intended to continue to retaliate because of his need for a accommodation from the stock picker and as a result of his inability to

tolerate the excruciating pain caused by the stock picker, Mr. Woods applied for Caterpillar's Disability Leave Benefit.

43.     Mr. Woods did not return to work until December 19, 2015, at which time he provided a note to his supervisor Corey Leyba that he could only work on a stable platform. Mr. Leyba assigned Mr. Woods to the stock picker and Mr. Woods left for the day.

44.     On December 23, 2015, Mr. Woods was placed on an indefinite suspension because of his refusal to work on the stock picker on December 19, 2015.

45.     Mr. Woods remained on an "indefinite suspension" for fourteen months until he provided a release to return to work with no restrictions on December 9, 2019.

46.     Mr. Woods' knee condition substantially limits major life activities, including but not limited to bending, walking, standing, sleeping, and performing manual tasks.

47.     Mr. Woods satisfactorily performed the essential functions of his job during the time he worked for Defendant.

48.     Mr. Woods could have performed the essential functions of the Materials Specialist job with reasonable accommodations.

49.     Mr. Woods could have performed the essential functions of other open positions had Defendant considered job reassignment as required by the ADA.

50.     Mr. Woods is a qualified individual with a disability under §§ 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

51.     Defendant subjected Mr. Woods to adverse employment actions, including but not limited to discipline and involuntary unpaid leave because of his disability and need for reasonable accommodation.

8

52.     As a result of Defendant's actions, Mr. Woods suffered embarrassment, humiliation, and lost enjoyment of his life as he was not permitted to work modified duty.

53.     Mr. Woods was the sole breadwinner for his marital household as his wife was disabled and also unable to work. Defendant's treatment of Mr. Woods caused strife, frustration, and anger.

54.     Defendant's actions including but not limited to refusing to provide him reasonable accommodations, refusing to engage in a meaningful interactive process, disciplining him for asserting his federally protected rights, and placing him on indefinite leave were done intentionally and with reckless disregard to the rights that protect disabled workers.

## DEIDRE "DEE" SMITH

55.     Ms. Smith was hired on March 21, 1997, as a Materials Specialist. She worked at the Denver Distribution Center located at 4705 E. 48th Ave., Denver, CO 80216.

56.     On May 21, 2015, Ms. Smith requested leave due to medically necessary bi-lateral knee surgery.  Ms. Smith's medical condition rendered her disabled within the meaning of the ADA.

57.     Prior to her departure, her supervisor Mike Lyman, told her that she may only return to work if she was 100% healed. Ms. Smith would not be returned to her job unless she could return without restrictions.

58.     Between November 2015 and May of 2017, Ms. Smith provided notifications to Defendant that she was able to return to work with restrictions and provided substantiating medical documentation. Ms. Smith received calls from Defendant which Ms. Smith would return, leave a message, and would never receive a call back.

59.     On or around May 27, 2017, Ms. Smith provided Defendant a return to work letter from her health care provider.

60.     Ms. Smith never received a response from Defendant regarding her return to work letter and, instead, received a termination notice for failing to return to work.

61.     Defendant did not engage in any interactive process as required by the ADA and forced Ms. Smith to remain on unpaid involuntary leave.

62.     Defendant, had it engaged in the interactive process, would have been able to accommodate Ms. Smith without undue hardship.

63.     Specifically, Defendant had duties that could have been assigned to Ms. Smith in her role that would have accommodated her disability including providing training, auditing, and assignment to the power truck. Ms. Smith further could have performed her assigned job with reasonable accommodations.

64.     Twenty-four months after initially taking leave for her knee surgery and multiple notifications that she could return to work with restrictions, Defendant discharged Ms. Smith for failing to return to work.

65.     Defendant refused to return Ms. Smith to work unless she was 100% healed or was able to return without restrictions.

66.     Because Ms. Smith was not able to return without restrictions, Defendant terminated her employment in violation of the ADA.

67.     Ms. Smith could have performed her job with reasonable accommodations.

68.     Ms. Smith could have performed another open position with equal pay, benefits, or status with or without reasonable accommodations had Defendant gone through the trouble of engaging in the interactive and accommodation process.

69.     Defendant's inflexible policy or practice of placing employees that have work restrictions on indefinite unpaid leave violates the ADA. Defendant failed to engage in the interactive process to determine accommodations required by Ms. Smith including but not limited to modified duty, job modification, or job reassignment. Instead, Defendant's 100% healed policy operated to discriminate against Ms. Smith because of her disability. Defendant's use of unpaid extended leave operated in retaliation for Ms. Smith's need for the interactive process and accommodation in violation of the ADA.

70.     Defendant's use of the policy requiring employees to be 100% healed or able to return to work without restrictions while failing to engage in the interactive process to identify reasonable accommodations was an intentional and willful violation of the ADA and operated with reckless disregard to Ms. Smith's federally protected rights.

71.     As a result of Defendant's violations of the ADA, Ms. Smith suffered non-economic damages including humiliation, embarrassment, and lost enjoyment of life. Defendant's failure to return her to work resulted in her losing her house which carries with it the shame and embarrassment of not being able to meet her financial obligations. This was caused directly by Defendant's failure to engage in the interactive process and return her to work with restrictions. Ms. Smith also suffered economic damages due to Defendant's failure to comply with the ADA.

**FIRST CLAIM FOR RELIEF**
**Failure to Provide Reasonable Accommodation to Mr. Woods and Ms. Smith**
**42 U.S.C. §§ 12112(a) and (b)(5)(A)**

72.     Plaintiffs assert and incorporate by reference all of the foregoing paragraphs.

73.     Defendant has violated the ADA by denying Plaintiffs reasonable accommodation in violation of 42 U.S.C. §§ 12112(a) and (b)(5)(A).

74.     Plaintiffs Christopher Woods and Deidre Smith are qualified individuals with disabilities or were otherwise regarded as disabled within the meaning of the ADA.

75.     Defendant was aware of the physical limitations of Plaintiffs due to their disabilities.

76.     Mr. Woods requested reasonable accommodation from use of the stock picker machine on or around September 29, 2015.

77.     Ms. Smith requested reasonable accommodation on May 21, 2015, for leave related to a necessary surgery, and provided notifications to Defendant of her ability to return to work with restrictions between November 2015 and May 2017 to which Defendant did not initiate the interactive process or provide accommodations.

78.     Defendant denied Plaintiffs' respective requests for reasonable accommodation.

79.     Defendant failed to engage in the interactive process with Plaintiffs to identify the precise limitations resulting from their disabilities and potential accommodations that could permit them to overcome those limitations.

80.     Despite Defendant's knowledge of the need for reasonable accommodation, Defendant failed to make reasonable accommodation for Plaintiffs physical limitations.

81.     The unlawful employment practices complained of herein were intentional.

82.     The unlawful employment practices complained of herein were done with malice or with reckless indifference to the federally protected rights of Mr. Woods and Ms. Smith.

83.     As a result of the unlawful employment practices complained of herein, Mr. Woods and Ms. Smith suffered economic and noneconomic damages and are permitted to recover from Defendant under the ADA.

### SECOND CLAIM FOR RELIEF
### DISCRIMINATORY DISCHARGE OF MS. SMITH
### 42 U.S.C. § 12112(a) and (b)(5)(B)

84.     Plaintiffs assert and incorporate by reference all of the foregoing paragraphs.

85.     Defendant violated 42 U.S.C. §§ 12112(a) and (b)(5)(B) of the ADA by failing to return Ms. Smith to work and discharging her because of her disabilities and/or because of her need for a reasonable accommodation because she did not have a full medical release and could not return to work 100% and/or without restrictions.

86.     Ms. Smith is a qualified individual with a disability and/or was regarded as disabled within the meaning of the ADA.

87.     Ms. Smith informed Defendant of her need for a reasonable accommodation to return to work between November 2015 and May 2017.

88.     Defendant, without engaging in the interactive process to determine her physical limitations, refused to accommodate Ms. Smith and required that she stay on unpaid extended leave.

89.     Ms. Smith was on unpaid extended leave for twenty-four months.

90.     During this time, Defendant did not engage in the interactive process to determine her physical limitations or make any effort to accommodate her and permit her to return to work in any capacity.

91.     On or around June 1, 2017, Defendant terminated Ms. Smith's employment even though it knew she could return to work with restrictions.

92.     Ms. Smith's discharge was because of her disability.

93.     The unlawful employment practices complained of in the foregoing paragraphs were intentional.

94.     The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to Ms. Smith's federally protected rights.

95.     As a result of the unlawful employment practices complained of herein, Ms. Smith suffered economic and noneconomic damages and are permitted to recover from Defendant under the ADA.

## THIRD CLAIM FOR RELIEF
### Retaliation Against Mr. Woods and Ms. Smith
### Section 503 of the ADA, 42 U.S.C. § 12203

96.      Plaintiffs assert and incorporate by reference all of the foregoing paragraphs.

97.     Defendant engaged in unlawful employment practices, in violation of Section 503 of the ADA, 42 U.S.C. § 12203, by retaliating against Mr. Woods and Ms. Smith because they engaged in protected activity, including but not limited to requesting reasonable accommodation, seeking to initiate the interactive process, complaining, and refusing to do work that caused them excruciating pain that was outside their medical restrictions.

98.     Mr. Woods presented to Defendant a note from a physician indicating that he could not perform work on the stock picker machine because of his disability.

99.     Defendant, in retaliation, assigned Mr. Woods to the stock picker machine.

100.     Mr. Woods refused to use the stock picker machine due to his medical restrictions because of his disability.

101.     Defendant disciplined Mr. Woods and put him on extended unpaid leave for approximately months.

102.     Between November 2015 through May 2017, Ms. Smith indicated her ability to return to work and need for a reasonable accommodation.

103.     Defendant did not engage in the interactive process with Ms. Smith.

104.     Defendant did not attempt to determine Ms. Smith's restrictions in order to determine if it could accommodate her restrictions.

105.     Defendant retaliated against Ms. Smith for her request for a reasonable accommodation by keeping her on extended unpaid leave until she could return to work with no restrictions.

106.     Defendant further retaliated against Ms. Smith for her request for a reasonable accommodation by terminating her employment on June 1, 2017.

107.     The effect of the practices complained of in the forgoing paragraphs has been to deprive Mr. Woods and Ms. Smith of equal employment opportunities and otherwise adversely affected their status as employees because they engaged in protected activity in violation of their federally protected rights under the ADA.

108.     The unlawful employment practices complained of herein were intentional.

109.     The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to Plaintiffs' federally protected rights.

**FOURTH CLAIM FOR RELIEF**
**Use of Discriminatory Qualification Standards For Mr. Woods and Ms. Smith**
**42 U.S.C. § 12112(a) and (b)(6)**

110.    Plaintiffs assert and incorporate by reference all of the foregoing paragraphs.

111.    During the relevant time period, Defendant administered its leave policies in conjunction with a 100% healed and/or no medical restrictions policy or practice that did not allow Mr. Woods and Ms. Smith to work because of their disabilities if they had medical restrictions.

112.    Under Defendant's 100% healed or no medical restrictions policy, employees with work restrictions are placed on indefinite unpaid leave unless they are able to work fully healed and without restrictions.

113.    Defendant applied these policies in a manner that did not allow for reasonable accommodations.

114.    Defendant applied these policies in a manner that made them serve as qualification standards or selection criteria that screen out or tend to screen out individuals with disabilities and is not job-related and/or consistent with business necessity in violation of Section 102(a) and 102(b)(6) and 42 U.S.C. §§ 12112(a) and (b)(6).

115.    The polices and practices complained of in the foregoing paragraphs deprived Plaintiffs of equal employment opportunities and/or otherwise adversely affect their status as employees because of their disabilities.

116.    The unlawful employment practices complained of in the foregoing paragraphs were done intentionally.

117.    The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to Plaintiffs' federally protected rights.

**FIFTH CLAIM FOR RELIEF**
**Use of Discriminatory Standards, Criteria, or Methods of Administration**
**Against Mr. Woods and Ms. Smith**
**42 U.S.C. §§ 12112(a) and (b)(3)(A)**

118.    Plaintiffs assert and incorporate by reference all of the foregoing paragraphs.

119.    Defendant's application of his 100% healed and/or no medical restrictions policy or practice has the effect of discrimination on the basis of disability and is not job related and consistent with business necessity, in violation of 42 U.S.C. §§ 12112(a) and 12112(b)(3)(A).

120.    During the relevant time period, Defendant maintained a policy or practice of not permitting employees to return to work unless they were 100% healed and/or had no medical restrictions which did not provide for reasonable accommodation.

121.    Under Defendants policy, employees that were unable to return from extended unpaid leave without being 100% healed and/or without medical restrictions were terminated.

122.    Defendant's application of this policy only permits employees to return to work if they are able to work without restrictions and/or with the need for accommodation.

123.    These policies serve as a standard, criteria, or method of administration that has the effect of discrimination on the basis of disability.

124.    The effect of the policies and practices complained of in the foregoing paragraphs have been to deprive Plaintiffs of equal employment opportunities and have otherwise adversely affected their status as employees because of their disabilities.

125.    The unlawful employment practices complained of in the foregoing paragraphs were done intentionally.

126.    The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to Plaintiffs' federally protected rights.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Court:

127.    Permanently enjoin Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from discriminating and retaliating against employees because of a disability or their need for a reasonable accommodation.

128.    Order Defendant to make Plaintiffs whole by providing appropriate backpay and lost benefits with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices including but not limited to reinstatement or front pay in lieu of reinstatement.

129.    Order Defendant to make Plaintiffs whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein.

130.    Order Defendant to make Plaintiffs whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described herein, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of credit standing, and stress in amounts to be determined at trial.

131.    Order Defendants to pay Plaintiffs punitive damages for its intentional and malicious or reckless conduct described in the paragraphs above, in amounts to be determined at trial.

132.    Grant such other relief as this Court deems necessary and proper in the public interest.

133.    Award Plaintiffs its costs, fees, awardable interest and all other remedies available at law for this action.

**JURY TRIAL DEMAND**

Plaintiffs request a jury trial on all questions of fact raised by this complaint.

Respectfully submitted this 21st day of February, 2021.

<div style="margin-left: 3em;">

GOODSPEED & MERRILL

*/s/ John-Paul C. Sauer*
John-Paul C. Sauer
Goodspeed & Merrill
7800 E. Union Ave.
Denver, Colorado 80237
Telephone: (720) 473-7644
E-Mail: Jsauer@goodspeedmerrill.com

*Attorneys for Plaintiffs*

</div>